# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

UNITED STATES OF AMERICA upon
the relation and for the use of the
TENNESSEE VALLEY AUTHORITY                                                PLAINTIFF

v.                                                                                            NO. 1:07CV133-M-D

TREE-CUTTING RIGHTS WITH
RESPECT TO A PREEXISTING
EASEMENT AND RIGHT-OF-WAY
OVER LAND IN CLAY COUNTY,
MISSISSIPPI, IN THE EVENT
PLAINTIFF DOES NOT OWN SAID
RIGHTS BY A RECORDED GRANT, and                        DEFENDANTS
FRED D. DAVIS

## ORDER

This cause comes before the court on the motion of plaintiff United States of America for summary judgment on the issue of just compensation and to dismiss the counterclaim filed by defendant. Defendant Fred Davis has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

The government filed this action seeking to vindicate its right to cut trees on defendant Fred Davis's property in Clay County, Mississippi, pursuant to a power line easement, designated as WCLU-44, which the Tennessee Valley Authority first acquired in 1972. On July 5, 2007, this court entered an order of immediate possession in this case, giving the government the right to conduct the tree-cutting operation specified in the Declaration of Taking in this case. The government did, in fact, cut four trees on defendant's property, which it asserts was necessary to protect the power lines which it had previously placed on defendant's property.

1

In seeking compensation for this cutting, defendant notes that, in 2006, the government "upgraded" its power lines on the easement in question to a double-circuit power line using wider H-frame support structures. Defendant argues that this caused trees which would not have endangered the original power line to endanger the new, wider power line. Defendant therefore argues that he should be compensated for the cutting of any trees which only became dangerous in view of the de facto widening of the easement in question. The government responds with a factual argument limited to the present case as well as a much broader legal argument which, if accepted by this court, would have implications far beyond the present case. With regard to the factual argument, the government has submitted an affidavit from TVA Civil Engineer Robert A. Harris which asserts that, with regard to the four trees cut in this case:

> TVA (1) cut one tree located on the right-of way pursuant to its "right to clear said right of way and to keep the same clear of . . . trees, " and (2) cut two trees off the right-of-way that were danger trees, and topped one tree off the right-of way so that it would no longer be a danger tree. The three trees that were off the right-of way qualified as danger trees whether defined with reference to the rebuilt line, or defined with reference to the original line.

Harris asserts that one of the four trees was directly on the "WCLU-44 right of way" and that the three remaining trees cut would have been "danger trees" even with relation to the power line as originally built.

Defendant has submitted no evidence (other than his own opinion) contesting this assertion, and the court therefore concludes that plaintiff owes defendant no additional compensation for the cutting of the four trees at issue in this case. The evidence before the court indicates that the four trees in question would have required cutting even if the power line had not been upgraded, and the government clearly has the right to protect the easement rights which it acquired in 1972. If defendant wished to contest the government's evidence in this

regard then he should have obtained professional opinions contradicting that of Mr. Harris, but he did not do so.

In light of this factual conclusion, it is unnecessary for this court to resolve the broader legal issue of whether the government would owe compensation for tree cuttings which only became necessary in view of the upgraded power line. Defendant notes that the government originally planned to cut at least twenty-seven trees on his property, but it appears that the instant litigation made it more cautious in this regard. The government invites this court to adopt a much broader legal conclusion which would seemingly authorize it to cut, without compensation, any and all "danger trees" along the entire length of the rebuilt power line, regardless of whether the trees would have endangered the original power line. While the law may or may not support such a broad conclusion, it is unnecessary for this court to reach it in this case. The court is particularly hesitant to do so based on the authority submitted by the government, which is factually distinguishable from the present case.

The government's primary authority is a Washington decision which involved an RV park whose operation was found to be endangered by a rebuilt power line. *See United States v. 3.6 Acres of Land*, 395 F. Supp. 2d 982 (E.D. Wash. 2004). While this decision provides some helpful authority to the government, its factual context is clearly distinguishable from the tree-cutting context, which involves a more direct taking of the property of a landowner. More importantly, the Washington decision was based largely upon the fact that the government had negotiated a "land use agreement" with the landowners which "clearly warned [them] that if the operation of an R.V. Park materially interfered with [the power agency's] easement that such activity could be restricted" and which further warned that "their use of the 3.6 acre parcel may

be further restricted if [higher capacity power] lines were installed." *3.6 Acres of Land*, 395 F. Supp. 2d at 990.

There is no agreement in this case which specifically warned defendant that additional trees might need to be cut on his property if the power line was upgraded, and it is thus apparent that the government's position is not as strong here as it was in the Washington decision. Nevertheless, the government carefully limited the cutting in this case to the trees which would have endangered the power line as originally built, and the court concludes that no additional compensation is owed for this cutting. The government's motion for summary judgment on the issue of just compensation is therefore due to be granted, although this court specifically reserves judgment regarding whether the government would owe additional compensation if it had engaged in the much broader cutting which it originally planned. The government's motion to dismiss the counterclaim filed by defendant is likewise due to be granted since, as noted by the government, a counter-claim may not be asserted in a condemnation action filed by the United States. *See, e.g. United States v. Certain Land Situated in the City of Detroit*, 361 F.3d 305, 308 (6th Cir.2004).

It is therefore ordered that the government's motion for summary judgment [14-1] and to dismiss the counterclaim filed by defendant is granted.

This the 22nd day of May, 2008.

        **/s/ MICHAEL P. MILLS**
        **CHIEF JUDGE**
        **UNITED STATES DISTRICT COURT**
        **NORTHERN DISTRICT OF MISSISSIPPI**